UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FORTINO GONZALEZ,

            Plaintiff,            Case No. 2:16-cv-266

v.                                 Honorable Gordon J. Quist

CATHERINE S. BAUMAN,

            Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Giotto, Sprader, Jack, Prunick, Immel, Denman, Russell, Maki, and Harris. The Court will serve the complaint against Defendant Henley.

**Discussion**

I.      Factual allegations

Plaintiff Fortino Gonzalez, a state prisoner currently confined at the Alger Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Catherine S. Bauman, Corrections Officers Unknown Henley and Unknown Giotto, Deputy Warden Scott Sprader, Administrative Hearing Investigator G. Jack, Prison Counselor Karen L. Prunick, Deputy Warden Anthony Immel, Sergeant J. B. Denman, Grievance and Appeals Section Manager Richard D. Russell, Administrative Law Examiner Linda Maki, and Resident Unit Manager R. Harris.

In Plaintiff's complaint, he alleges that he has been diagnosed as suffering from Degenerative Muscle Disease, which requires him to use a leg brace in order to walk. On March 21, 2016, at 8:25 p.m., Plaintiff was transferred to LMF from the Kinross Correctional Facility (KCF). Defendant Henley informed Plaintiff that he had been assigned to an upper bunk in the general population. Plaintiff explained that he could not use an upper bunk because of his disability and that he had an accommodation for a bottom bunk detail. Plaintiff told Defendant Henley that Patrick F. Gasperich, RN, had provided Plaintiff with a medical detail upon his arrival at LMF. Plaintiff attaches a copy of a "special accommodations orders" form to his complaint as an exhibit. The form states, "Housing: Bottom bunk" and is signed by Mr. Gasperich. *See* ECF No. 1-1, PageID.24. When Plaintiff attempted to show him the medical detail, Defendant Henley became visibly angry, refused to look at the medical detail, and ordered Plaintiff to place his hands behind his back. Defendant Henley then placed Plaintiff in restraints and took him to segregation.

Defendant Henley subsequently wrote a class II misconduct ticket on Plaintiff for "disobeying a direct order." In the ticket, Defendant Henley stated:

> At 2025 Inmate Gonzalez #761448 Maple #227 upper bunk was brought into the unit on a transfer from Kinross. He was informed that he was going into cell #227 upper bunk. Gonzalez stated he couldn't lock in an upper bunk he had a bottom bunk detail. I contacted Control Center and was informed he didn't have a bottom bunk detail on OMNI put him on the upper bunk. Gonzalez stated put me in seg. I can't lock in an upper bunk I have a bottom bunk detail I then gave Gonzalez a direct order to lock in #227 for the time being and informed him I would check with Health Service to see if he had a detail in his file. Gonzalez then became argumentative stating he shouldn't be in Level IV, he was a Level II inmate again stated put me in seg. I can't lock in an upper bunk. I then placed restraints on Gonzalez and he was escorted to segregation. Gonzalez ID'd by his State ID Card and Maple Unit Master Count Board.

*See* ECF No. 1-2, PageID.26.

Later that evening, Defendant Denman came to Plaintiff's segregation cell to review the ticket with him. Plaintiff told Defendant Denman that he had done nothing wrong and asked him to check with Health Care to verify that he had a bottom bunk detail. Defendant Denman told Plaintiff that he would look into his claims, and that if Plaintiff was correct, he would be released from segregation and the ticket would be "pulled." Defendant Denman never contacted Health Care or returned to discuss the situation with Plaintiff.

On March 22, 2016, at approximately 10:38 a.m., Defendant Jack came to Plaintiff's cell and asked if he wanted to write a statement or have any witnesses or documents obtained on his behalf for the misconduct hearing. Plaintiff stated, "I don't understand what the problem is, I can't get on a top bunk!" Plaintiff asked Defendant Jack why staff couldn't just look at Plaintiff's medical detail, which would confirm that Plaintiff was unable to climb up to a top bunk. Defendant Jack told Plaintiff that he would call Health Care to see if there was a medical detail, and that if there was a detail, he was sure Plaintiff would be released from segregation.

Defendant Jack contacted Defendant Giotto and procured a witness statement. The statement indicated that Defendant Giotto had been contacted by Maple Unit to verify Plaintiff's bottom bunk detail. Defendant Giotto stated that a search of OMNI [Offender Management Network Information] did not find a medical detail for Plaintiff. Defendant Maki conducted Plaintiff's hearing on the misconduct ticket on March 23, 2016. Defendant Maki did not allow Plaintiff to speak during the hearing, demanding that Plaintiff "keep his mouth shut." Defendant Maki found Plaintiff guilty and sanctioned him to 20 days loss of privileges, which lasted until April 13, 2016.

Following the misconduct hearing, Plaintiff was seen by Security Classification Committee (SCC) members Defendants Prunick, Harris, Jack, and Immel. Plaintiff was informed that his bond would be revoked and that he would serve additional time in administrative segregation because he had not "learned how to jail" and "would get a taste of LMF justice." Defendants also told Plaintiff that he was not in charge of running the prison and "just maybe, when you leave segregation after a couple months, you'll go to the bunk we tell you to, and not tell us what you're not gonna do." Plaintiff stated that he was a level II prisoner and could not understand why he was being placed in a level IV housing unit. Plaintiff attaches copies of security classification screen reviews he received, dated March 21, 2016, and March 23, 2016, which show that Plaintiff is a level II prisoner, but that the nature of his misconduct warranted an increased security level. (ECF Nos. 1-4 and 1-5.)

Plaintiff states that each time he was seen by SCC Defendants Sprader, Immel, Prunick, Harris, and Bauman from March 28, 2016, until May 8, 2016, they asked him if he was done playing games, and that they would keep him in segregation for as long as it took for him to learn. Plaintiff was finally released from segregation after forty-eight days. Following his release

from segregation, Plaintiff filed a grievance with the help of a legal writer, which was rejected by Grievance Coordinator Mary Bonevelle as untimely. Defendants Bauman and Russell upheld the rejection on appeal. Plaintiff filed an appeal of his misconduct ticket on May 27, 2016. Plaintiff's appeal was rejected as untimely by Defendant Russell on September 23, 2016.

Plaintiff contends that Defendant Henley clearly lied in the misconduct ticket because it was easily verifiable that Plaintiff had a bottom bunk detail. Plaintiff states that supervisory prison staff believed Defendant Henley's representations to be true at the time they were made and relied on those representations to place Plaintiff in segregation. Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To the extent that Plaintiff is claiming that his class II misconduct conviction violated his Fourteenth Amendment procedural due process rights, this claim lacks merit. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. A minor misconduct conviction does not implicate the due process clause. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of

his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Moreover, Plaintiff's claim that his placement in administrative segregation violated his due process rights also lacks merit. In *Sandin,* 515 U.S. at 484, the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). In this case, Plaintiff was confined to segregation for a period of forty-eight days. Plaintiff fails to allege any facts showing that his confinement in segregation was atypical and significant. Therefore, Plaintiff's due process claims are properly dismissed.

In addition, the Court notes that Defendant Maki is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory

functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id*.; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claims against Defendant Maki are properly dismissed.

The Court notes that Plaintiff's retaliation and Eighth Amendment claims against Defendant Henley are nonfrivolous and may not be dismissed on initial review. Plaintiff claims that when he tried to show Defendant Henley his medical detail, he became visibly angry, refused to look at the detail, and instead falsified a misconduct on Plaintiff. Plaintiff claims that this constituted deliberate indifference to his serious medical need, as well as retaliation for Plaintiff's assertion of his right to such treatment. However, Plaintiff's claims against the remaining Defendants all relate to the disposition of the misconduct and the review of his segregation status. Plaintiff fails to allege facts showing that Defendants Bauman, Giotto, Sprader, Jack, Prunick, Immel, Denman, Russell, Maki, and Harris acted with a desire to deprive him of needed medical care or to retaliate against him for engaging in protected conduct. Therefore, Plaintiff's allegations against Defendants Bauman, Giotto, Sprader, Jack, Prunick, Immel, Denman, Russell, Maki, and Harris only implicate due process and are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Giotto, Sprader, Jack, Prunick, Immel, Denman, Russell, Maki, and Harris will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Henley.

An Order consistent with this Opinion will be entered.


Dated: August 31, 2017 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE